PRESTON, PLAINTIFF AND APPELLANT, *v.* LUYANDO, DEFENDANT AND APPELLEE.

APPEAL from the District Court of Humacao in an Action of Unlawful Detainer.

No. 2536.—Decided January 12, 1923.

UNLAWFUL DETAINER—CONTRACT—ATTORNEY IN FACT.—The evidence examined in this case showed that the defendant was occupying the property involved by virtue of a contract whose nature can not be properly determined in an action of unlawful detainer; that the said contract was entered into by him with the former owner of the property and was ratified by the latter's widow after his death, and that while the widow was away from the Island this action was brought by her attorney in fact who did not show that he had been specially instructed to act. *Held:* That the district court acted correctly in dismissing the complaint.

The facts are stated in the opinion.

*Mr. F. González* for the appellant.

*Mr. F. Cervoni* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an action of unlawful detainer. It is alleged in the complaint that the plaintiff is the owner of a farm property of 22 acres in the ward of Río Blanco of Naguabo with her title recorded in the registry; that the defendant is in possession of "about 2 acres, more or less," of that property without paying any rent, and that demand was made upon him to vacate the said piece of land and he refused to comply.

The defendant pleaded that the complaint did not state facts sufficient to constitute a cause of action, denied generally and specially each and all of the allegations of the complaint and alleged the following as new matter:

"That the defendant is informed and believes that the plaintiff, Florence E. Preston, who is at present residing in the United States, has no knowledge of this action and that it has been brought in her name by Carlos Maymí, her agent, without her authorization or consent.

"And he further alleges that for seven years the defendant has lived on and farmed a property belonging to the plaintiff, but not the property described in the complaint, at the request and with the consent of the plaintiff and of her predecessor in title, Gustavo Preston. Under this arrangement the defendant has built thereon his own dwelling-house and has planted one acre of coffee, two acres of malangas, half of an acre of potatoes, fourth of an acre of yautías, half of an acre of cassava and 100 gandule trees, the value of all of which is $600. This farming has been and is being done by the defendant without opposition or objection by any person."

The plaintiff moved to strike out the "new matter" and it was so ordered by the court, the defendant taking an exception.

The evidence examined consisted of a certificate issued by the Registrar of Property of Humacao to the effect that the property of 22 acres described in the complaint is recorded in the name of the plaintiff, and of the testimony of two witnesses, as follows:

"The plaintiff called Carlos Maymí Salgado who was sworn and on examination by the plaintiff's attorney testified as follows: That his name is Carlos Maymí Salgado and he is the *manager for the widow of Mr. Preston* and knows the property called Florida which consists of three different parcels, as follows: The large property of 478 acres, another called Cercado of 32 acres and another smaller property of 22 acres which is occupied by the defendant and is on the Hicaco River, bounded on the east by the Hicaco River; on the south and west by property of one Hernández and lands be-

longing to the heirs of Borges, and on the north by property of the Rogers; that this property of the Rogers formerly belonged to the Countess of Galves; that the defendant and his son-in-law live on the 22 acres without paying any rent, and that the witness notified the defendant that he should vacate the property three months before and he had not done so.

"Cross-examined by the defendant's attorney, the witness testified as follows: That three months before he had demanded of Luyando that he vacate the property; that for six or eight months he has been *manager* and before that he was *overseer* for a year, and as *overseer* and *manager* he has been on the property for nearly two years; that *when he first took charge of the property as overseer Luyando already lived there; that he does not know who put him there or whether or not he lived there, but Luyando himself and other persons have informed him that he has been there seven years and he does not know why he lives there;* that Luyando has a coffee patch worth about $40 or $50 and also some banana plants; that the house in which Luyando lives belongs to the property and he occupies only a part of it, that when the witness took charge of the property Luyando was living in a small house belonging to the property which he tore down in order to build the new house in which he now lives; *that as manager of the property he has authority to do anything as the representative of Mrs. Preston except to sell the property;* that he has not the power of attorney with him, but can assert that he has it in his safe and did not bring it because he thought it was not necessary and, *besides, his attorney did not advise him to bring it;* that when he took charge of the property the former manager was Mr. Lavergne and when Luyando came there and began to pull down the house in order to build a new one Lavergne was ill and sent for Luyando and said to him that he did not authorize the substitution; that he knows that the former manager wanted to oust Luyando from the property, but the witness advised him not to do so; *that Mrs. Preston did not recommend Luyando to the witness,* for after the witness had recommended him to Lavergne it was unnecessary for her to recommend him to the witness; that Lavergne wanted to oust him, but the witness pitied him because he was old and poor and recommended him favorably to Mrs. Preston, and afterwards the witness was left as manager.

"The plaintiff having rested, the defendant called Ramón Luyando who, after being sworn, was examined by his attorney and

testified as follows: That his name is Ramón Luyando; that he lives in Río Blanco Arriba of Naguabo on the property of Gustavo Preston, which now belongs to Mrs. Florence Preston; that he has lived there for about seven years; that he formerly lived on his own property in Maizales and *has been in the service of Gustavo Preston for about 21 years;* that that property used to belong to Pablo Maldonado; *that he went to live on that property* because Mr. Preston put him in possession of it, telling him *to come there and sell the parcel of land which he owned,* because the witness had done him great services and he wanted to have him near in case he needed him; that there was an old house which was in a ruinous condition and one day Mr. Preston asked him whether he was satisfied and he replied that he was not because the house was falling to pieces and he had been waiting for his permission to build another house, because be had two houses on his property and he had sold one and moved the other with more lumber that he had purchased in order to build, for he could build a good house *if he would sell to him a small piece of land, and thereupon Mr. Preston replied: 'I will not sell it, but I will give it to you so that you may plant and cultivate anything you like so that when you become old and can not earn wages you may have something to live on;' that Mr. Preston died and the widow knew that the witness lived there,* because she came there and sent for him and asked him if he was Ramón Luyando, and when he answered in the affirmative she said that as he had been with her husband a long time, *he had advised her to treat him well, and then she sent for Maymí and told him to be careful because this was a man whom Mr. Preston greatly liked.* That this occurred in his presence and she told Maymí to tell it to him in Spanish so that he could know what she was saying; that he replied to what she said; that what she said was to treat him well and give him such work as he could do, for he was an old man, and to care for him well; *that they left him there and nobody had a right to bother him;* that the witness has no other place in which to live and no house except the one that he built on the property; that he has nothing but the growing crops. On cross-examination by the plaintiff's attorney he testified that he lived on that property with the consent of Mr. and Mrs. Preston; that he pays nothing for staying there; that his only work is to inspect the boundary lines, and formerly he also had in his charge some 16 or 20 head of cattle of which he took care without being paid for it; that since they took away the

cattle he pays no rent, but works on the plantation.'' (Italics vol-
unteered.)

The court rendered judgment dismissing the complaint
and thereupon the plaintiff took the present appeal.

The grounds on which the district court based its judg-
ment do not appear from the record. The appellee filed no
brief and did not appear at the hearing on the appeal. We
have heard only the appellant, who alleges ''that the court
erred in dismissing the complaint because the judgment is
contrary to the evidence.''

In our opinion the court erred in striking out the ''new
matter,'' but the error is unimportant, inasmuch as the de-
fendant was permitted to introduce evidence at the trial in
support of the allegations therein contained.

This case is worthy of careful examination. In the com-
plaint it was alleged that the defendant was occupying only
two acres of land of a property of 22 acres without de-
scribing the two acres. The evidence tended to show that
the defendant was in possession of the whole property of 22
acres; but this detail is not of decisive importance.

We agree with the appellant that the evidence showed
that the property belonged to Florence E. Preston and that
the defendant has no dominion title to the land which he is
occupying, whether 2 or 22 acres. This is not, therefore,
a case involving a conflict of titles. The defendant is a
mere possessor, but he alleged and proved, in our opinion,
that he came into and is holding such possession by virtue
of a contract entered into by him with the former owner of
the property and ratified later by his wife, Mrs. Florence
E. Preston, the nature of which, considering the circum-
stances which we shall forthwith discuss, can not be properly
determined in this action of unlawful detainer.

According to section 1 of the Unlawful Detainer Act, the
action may be brought by the ''owners of property, usufruc-

tuaries thereof, or by any other person or persons entitled to the enjoyment of such property, or by persons claiming under them.''

The beginning of the complaint is as follows: ''Now comes the plaintiff, by her attorney  *  *  * ,'' and the person named as plaintiff is really the owner of the property. But the evidence showed that Mrs. Preston did not personally authorize this action. It was brought by her self-styled manager Maymí. He testified that he was authorized to do anything in relation to the property of his principal except to sell it. This may be true, but as the evidence showed a very personal relationship between the defendant and the former and present owners of the property, the testimony of Maymí should have been based on some special instructions at least.

During the discussion of this case it was maintained that the conclusion which we have reached is against the well established principles governing the relations between attorney and client, inasmuch as the language of the complaint creates the presumption that Mrs. Preston, the owner of the property, directly authorized the attorney. We do not agree. The well established principles obtain. The attorney acted correctly. He followed the instructions of the manager, considering him to have sufficient authority, and drafted the complaint properly. But the evidence, which was admitted without objection, brought to light that the power exercised by the manager was, to say the least, doubtful, considering the very special circumstances of the case, and this being so, the trial court was justified in acting as it did under all of the facts of the case.

The judgment appealed from must be

*Affirmed.*

Justices Hutchison and Franco Soto concurred.
Justices Wolf and Aldrey dissented.

The probability is that the court below thought there was
a conflict of titles or something akin thereto and hence errone-
ously, to my way of thinking, refused to render judgment.
There is no opinion. This court holds that there was a
contract shown between the predecessor in title of the com-
plainant and the defendant, but the majority opinion does
not even attempt to say what kind of a contract it was or
its term, if it had one. Ordinarily, in regard to land, there
are leases or licenses or something else carved out of or
less than a full title. To say that the defendant holds under
a contract is merely to state the conclusion of some undefined
premises. More positively, I should say, that the title of
the complainant being admitted, the defendant was bound
to show that he had a right to the possession, and for that
he needed something more than the vague supposed promises
of a man who was dead and could not testify, and a sup-
posed ratification. If leases could be proved in this indefi-
nite fashion the unlawful detainer act would probably soon
be a dead letter.

The court below eliminated the defense sought to be set
up, namely, that the attorney who appeared had no due
authority to represent the complainant. Hence it was not
properly before this court, especially as defendant did not
appeal.

To my mind, the majority opinion necessarily decides
that without an issue to that effect the right of counsel to
represent his client may be challenged by appellee on appeal.
The authorities show that the proper way to attack the right
of counsel to represent his client is by motion, or the like,
made before the trial. 6 C. J. 635.

It was true that the attorney in fact of complainant said
something to the effect that he, and not complainant, author-

ized the appearance of counsel, but the statement of the witness in response to no issue in the case was not binding on counsel. The attorney in fact, however, declared that he had due authorization to employ counsel. The presumption would be that when counsel appeared he had obtained direct authorization. 6 C. J. 631. Mrs. Preston may have communicated directly or authorized her agent to employ counsel. All these matters fall within the important presumption that when counsel appears he acts with due authority. It takes a special notice to challenge the authority of the attorney.

There was no due challenge in the court below of the authority of the attorney, and that authority could not, in my opinion, properly be questioned in this court. 6 C. J. 635, note 10.

For these reasons I dissent.